(No. 58247.—)

AULER LAW OFFICES, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Dennis R. McKee, Ap-
pellee).

*Opinion filed January 20, 1984.*

Moore & Associates, of Champaign, for appellant.

Charles W. Hendrix, of Champaign, for appellee.

JUSTICE SIMON delivered the opinion of the court:

An arbitrator for the Industrial Commission denied the workers' compensation claim of Dennis R. McKee, finding that he failed to establish that an automobile collision in which he was injured in the course of his employment was the cause of a hiatus hernia for which he sought compensation. The Industrial Commission affirmed the decision of the arbitrator and adopted it as its own. On *certiorari*, the circuit court of Champaign County, in a carefully prepared opinion explaining its reasoning, found the decision of the Commission to be against the manifest weight of the evidence and reversed it and remanded for computation of an award. The view

expressed by the circuit judge was that the Industrial Commission found that McKee was injured in the accident and, because the only medical evidence was that he suffered a hiatus hernia or aggravated an existing one as a result of the trauma, there was no factual question for the Commission to resolve. The employer, Auler Law Offices, has appealed that decision, and the award which was subsequently entered by the Commission and confirmed by the circuit court.

To be resolved in this appeal is whether the original decision of the Commission that the employee failed to prove a causal connection between his hiatus hernia and the automobile accident was against the manifest weight of the evidence.

The automobile which McKee was driving in the course of his employment as an investigator for the Auler Law Offices was struck in the rear by a bus. At the time McKee's car was standing still; the bus was moving at no more than five miles per hour. Although McKee testified that the impact threw him forward so that his chest struck the steering wheel, he told the bus driver at the accident scene that he was not hurt. Neither vehicle was damaged, and the accident was not immediately reported to the police.

That evening, while attending a party, McKee became dizzy and nauseated. Later he complained of a funny taste in his mouth and became unconscious for a few seconds. Approximately six hours after the accident, McKee was taken to a hospital emergency room by his employer, attorney Robert Auler. He was examined there, but not treated because Mr. Auler got into a dispute with one of the doctors. The hospital records, which were in evidence, did not indicate that this examination disclosed a hiatus hernia.

Approximately two weeks after the accident, McKee was examined at a clinic and diagnosed as having a mod-

erate sized hiatus hernia. He did not seek further treatment until three or four months later when he consulted Dr. Victor Wojnar, who at the time was treating McKee for a racquet ball injury. Approximately seven months after the accident, McKee entered a hospital where Dr. Wojnar performed a surgical procedure to repair his hiatus hernia. McKee did not return to work for approximately five months.

Although the employer emphasizes that McKee told the bus driver immediately after the accident that he was not injured, McKee insists his chest struck the steering wheel, and he responded as he did to the bus driver because he did not realize at the time that he had been seriously injured. The Industrial Commission, as the circuit judge pointed out, found that McKee was injured in the accident. The question, however, is the nature of the injury McKee sustained—specifically, whether the accident caused a hiatus hernia or aggravated a hiatus hernia from which McKee was already suffering. The employer challenged the medical testimony and argued that it was impeached by Dr. Wojnar's inconsistent earlier statements as well as weakened by his own testimony. This is why it became necessary for the Commission to evaluate the medical testimony and decide how much credence to give it.

Dr. Wojnar, McKee's only medical witness, testified that if he had a hiatus hernia before the accident it might have been aggravated by the trauma, and that if he did not have the hiatus hernia before the accident it could have been caused by the trauma. Dr. Wojnar's opinion was not disputed by any other medical testimony. He gave a reason for his opinion that an injury could cause a hiatal hernia, but stated that he did not know whether that opinion was shared by his colleagues because medical textbooks do not cite trauma as a leading cause of hiatus hernia. Rather, they recite as the leading

cause an anatomical variation in the construction of the hiatal ring which would be congenital in nature.

McKee was covered by a group health policy issued by Prudential Life Insurance Company which did not cover work-related claims. After consulting with Dr. Wojnar, McKee submitted a claim to Prudential under his group health coverage for the disability resulting from his hiatus hernia in which he stated that his claim was not due to an injury and that his condition did not arise out of his employment. At the same time Dr. Wojnar submitted an attending physician's statement to Prudential in which he stated that McKee's hiatus hernia was not "due to injury or sickness arising out of patient's employment." McKee signed this form authorizing the carrier to pay benefits to Dr. Wojnar and his signature appears to have been affixed almost two weeks after Dr. Wojnar signed the form.

The statements which the claimant and his treating physician forwarded to Prudential provided a foundation for the Commission's finding that McKee failed to prove a causal connection between his hiatus hernia and his accident. (*Mechanic's Universal Joint Division, Borg-Warner Corp. v. Industrial Com.* (1961), 23 Ill. 2d 441, 445; *Allis Chalmers Manufacturing Co. v. Industrial Com.* (1961), 23 Ill. 2d 497, 501; see also *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 217; *Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439, 443.) "Obviously statements in formal written documents cannot be tendered at face value for the purpose of obtaining benefits, and then lightly explained away when they stand in the way of claims for other benefits of an inconsistent nature." (*United States Steel Corp. v. Industrial Com.* (1956), 8 Ill. 2d 407, 413-14.) Although McKee has attempted to explain the circumstances under which those statements were signed and transmitted to Prudential, it was for the Industrial

Commission to decide how much reliance to place upon those explanations, how those statements affected the credibility of the witnesses on which McKee relied, and whether to attach greater weight to the evidence offered by McKee to show causation or to the earlier statements of both McKee and Dr. Wojnar that the hiatus hernia was not the result of an injury and did not arise out of his employment. It is obvious that these earlier statements undercut McKee's contention that the surgical procedure performed by Dr. Wojnar was necessitated by the injury he received in the accident. Aiding the Commission in its decision was Dr. Wojnar's qualification of his own medical testimony as to causation by his admission that he was not certain that his opinion that trauma could cause a hiatus hernia was shared by the medical community at large.

We recently said that a decision by the Commission can be set aside "only if its findings of fact are against the manifest weight of the evidence [citation] or its decision is contrary to law." (*Courson v. Industrial Com.* (1983), 98 Ill. 2d 1, 9.) We have also noted that "it is axiomatic that this court will not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor will we substitute our judgment for that of the Commission unless its findings are against the manifest weight of the evidence." (*Castaneda v. Industrial Com.* (1983), 97 Ill. 2d 338, 341.) The Industrial Commission has the responsibility of determining "the credibility of the witnesses and the weight to be given their testimony." (*Campbell v. Industrial Com.* (1983), 99 Ill. 2d 210, 218.) Finally, we recently stated that "[t]he resolution of whether there is a causal connection between the claimant's injuries and the employment is uniquely within the province of the Industrial Commission." (*Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 236.) Based on

these elemental principles applicable to judicial review of decisions of the Industrial Commission, we conclude that the original decision of the Commission denying benefits to McKee was not against the manifest weight of the evidence and should have been confirmed by the circuit court. We reverse that court and direct the reinstatement of the Commission's initial decision.

*Judgment reversed.*